**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (297557)
ryan@kazlg.com
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff,
Derrick Young

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **Derrick Young, individually and on behalf of others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**Wilshire Law Firm, P.L.C.,**<br><br>Defendant. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §227 et seq.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff Derrick Young ("Plaintiff") brings this action against Defendant Wilshire Law Firm, P.L.C. ("Defendant") to secure redress for violations of the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c).

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the TCPA, 47 U.S.C. § 227 et seq., (the "TCPA").

2. Defendant operates as a personal injury law firm. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the Telephone Consumer Protection Act, 47. U.S.C. § 227 et seq. ("TCPA"), a federal statute. Moreover, jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call that is in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

5. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2), Defendant resides in Los Angeles, California, and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant

CLASS ACTION COMPLAINT

provides and markets its services within the district, thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's conduct against Plaintiff occurred within the State of California where Plaintiff resides, subjecting Defendant to the Central District of California.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Victorville, California.

7. Defendant is a Public Limited Company whose principal office is located in Los Angeles, California.

## THE TCPA

8. The TCPA states that the regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations. 47 U.S.C. § 227(c)(3).

9. The TCPA further states that it is prohibited to "any person from making transmitting a telephone solicitation to the telephone number of any subscriber included in such database."  47 U.S.C. § 227(c)(3)(F).

10. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

> **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

CLASS ACTION COMPLAINT

**(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or both such actions.

11. In addition to its broad prohibition on calls to any number listed on the NDNCR, the TCPA prohibits *any* telemarketing call "unless such [entity] has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that [company]." §64.1200(d). The "minimum standards" for these procedures include training of personnel engaged in marketing on the existence and use of an internal do-not-call list, placing an individual's phone number on that internal do-not-call list, and honoring that request within no more than 30 days of its receipt. *Id.* An entity violates the TCPA if it initiates a phone call without having implemented the minimum procedures.

12. Today, 230 million telephone numbers are on the National Do Not Call Registry.[1]

13. Despite the widespread embrace of the NDNCR, companies like Defendant flagrantly ignore the Registry and invade the privacy of consumers with unwanted calls.

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in

---

[1] Simon van Zuylen-Wood, *How Robo-callers Outwitted the Government and Completely Wrecked the Do Not Call List,* WASH POST (MAGAZINE), Jan. 11, 2018, *available at* https://www.washingtonpost.com/lifestyle/magazine/how-robo-call-moguls-outwitted-the-government-and-completely-wrecked-the-do-not-call-list/2018/01/09/52c769b6-df7a-11e7-bbd0-9dfb2e37492a_story.html (last accessed June 10, 2024).

CLASS ACTION COMPLAINT

violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

CLASS ACTION COMPLAINT

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. Id.

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

22. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. See *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir.

CLASS ACTION COMPLAINT

2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (emphasis added).

24. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

25. Plaintiff owns a cellular telephone that he uses for residential purposes like calling his friends and family.

26. On May 28, 2025, Plaintiff received a call from Defendant from the phone number 213-381-9988. On that call, Defendant attempted to solicit its services in Plaintiff's potential personal injury case. Plaintiff declined the solicitation.

27. On June 1, 2025 Plaintiff received another call from Defendant. from the phone number 424-484-9838 On that call, Defendant attempted to solicit its services in Plaintiff's potential personal injury case. Plaintiff declined the solicitation.

28. At some point in early June 2025, Plaintiff told Defendant to stop calling Plaintiff.

29. Despite Plaintiff's request, Defendant called Plaintiff two or more times after Plaintiff revoked consent attempting to solicit its services in Plaintiff's potential personal injury case.

30. Defendant's calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., offering personal injury case representation.

31. Plaintiff received the subject calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant called many other individuals residing within this judicial district.

32. As of early June 2025, Plaintiff revoked any prior express written consent that may have been given.

33. Plaintiff is the subscriber of the phone associated with the number that was called and is financially responsible.

34. The calls appeared as coming from Wilshire Law Firm on Plaintiff's cell phone's Caller ID.

35. Defendant's unsolicited calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, and trespass. Defendant's calls also inconvenienced Plaintiff and caused disruption to his daily life.

**CLASS ALLEGATIONS**

36. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

37. Plaintiff brings this case on behalf of a Class defined as follows:

> The DNC Class
> All persons within the United States who received at least two telemarketing phone calls within a 12-month period at least 31 days after adding their residential phone number on the national do-not-call registry from Defendant to said person's telephone within the four years prior to the filing of this Complaint.

> The Internal DNC Class
> All persons within the United States who received a telemarketing phone calls after telling Defendant to stop calling said person's telephone within the four years prior to the filing of this Complaint.

38. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members

KAZEROUNI
LAW GROUP, APC

number in the several thousands, if not more.

**NUMEROSITY**

39. Upon information and belief, Defendant has placed telemarketing calls to residential telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

40. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

41. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

  i.  Whether Defendant made solicitation calls to Plaintiff's and Class members' residential telephones more than 31 days after the phones were registered on the national do-not-call registry within a 12 month period;

  ii.  Whether Defendant can meet its burden of showing that it obtained prior express written consent to send such messages;

  iii.  Whether Defendant's conduct was knowing and willful;

  iv.  Whether Defendant is liable for damages, and the amount of such damages; and

  v.  Whether Defendant should be enjoined from such conduct in the future.

42. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely makes solicitation calls to residential telephone numbers is accurate, Plaintiff and the Class members will have identical

- 9 -

claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

43. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories regarding unsolicited text messages being sent by Defendant to Class members.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

44. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTIONS IS SUPERIOR AND ADVISABLE

45. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

46. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

CLASS ACTION COMPLAINT

## COUNT I
### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)
#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

47. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

48. Plaintiff and members of the National DNC Class received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendants' goods and/or services without their written prior express consent.

49. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

50. Defendants made at least two unsolicited phone calls to the residential telephones of Plaintiff and the Class members, residential telephone numbers which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

51. Defendant knew that it did not have prior express written consent to make these phone calls, and knew or should have known that it was making calls to residential numbers on the National Do-Not Call Registry in violation of the TCPA.

52. Defendant willfully or knowingly allowed phone calls to be made to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members, yet disregarded such information and placed illegal and unwanted solicitation text messages and calls.

53. Defendant's calls caused Plaintiff and members of the National DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

- 11 -

CLASS ACTION COMPLAINT

54. Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(c)(5) of the TCPA.

55. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

56. Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

57. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

### COUNT II
### NEGLIGENT AND WILLFUL VIOLATIONS OF 47 C.F.R. § 64.1200(C)
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

58. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

59. Plaintiff and the putative class members told Defendant to stop calling.

60. Defendant continued to call Plaintiff and the putative class members multiple times.

61. Defendant failed to place Plaintiff and the putative class members on its internal do-not-call registry.

62. As a result, Defendant violated 47 C.F.R. § 64.1200(c).

63. Thus, Plaintiff and the putative class members are entitled to $500 per negligent violation and treble damages for each willful violation.

### PRAYER FOR RELIEF

64. **WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the

following relief:

      a)    An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and counsel as Class Counsel;

      b)    An award of actual and statutory damages;

      c)    An order declaring that Defendant's actions, as set out above, violate the TCPA;

      d)    An injunction requiring Defendant to cease all unsolicited calls, and to otherwise protect the interest of the Class;

      e)    Such further and other relief as the Court deems necessary.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 9, 2025          Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Ryan L. McBride
Ryan L. McBride, Esq.
Attorney for Plaintiff and the Proposed Class

- 13 -
CLASS ACTION COMPLAINT